SOUTHERN RAILWAY COMPANY v. WILLIAM L. FORREST et al.

Western Section.   July 23, 1931.

Petition for Certiorari denied by Supreme Court, December 19, 1931.

Ewing, King & King and Fred S. Toombs, all of Memphis, for appellant.

M. C. Ketchum and Randolph, Randolph & Clifton, all of Memphis, for appellee.

SENTER, J. The complainant filed its' original bill as an ejectment suit to recover a lot or parcel of land in triangular form from William L. Forrest, and also to recover from defendant, Mrs. Mary T. Sullivan, another lot immediately adjoining and lying west of the Forrest lot. Both these lots are situated in the city of Memphis and on the north side of Monroe Avenue. The other defendants to the bill are the tenants, respectively, of Forrest and Mrs. Sullivan. The complainant railway company, in its bill, alleges ownership in fee of the property involved as the successor in ownership of the

Memphis & Charleston Railroad Company, which was the successor of the old LaGrange & Memphis Railroad Company.

The bill alleges that the property involved was acquired by its said predecessor in title by virtue of its charter powers and rights for railroad purposes and that it is now needed for said purposes. The bill prays that the title and right of possession to said tracts of land be decreed to complainant; that it be put in possession thereof by proper decrees; that an accounting be had to ascertain the rents and profits from said lands during the time the defendants were in possession thereof; that the title papers of defendants be declared to be void and a cloud upon complainant's title and be removed as such, and that the defendants be perpetually enjoined from setting up any claim or doing any acts whatsoever under or by virtue of their title papers; and that a charter right to said land be decreed in favor of complainant.

The separate answers of defendants, William L. Forrest and Mrs. Mary T. Sullivan, set up practically the same defenses. By their answers they deny that the Southern Railway Company is the owner of the property sued for and did not have title thereto and was not entitled to possession of same. The answers further alleged that defendants, respectively, are in possession of the respective lots as alleged in the bill; that they and their predecessors in title claiming under an unbroken chain of title beginning with a deed from John W. Moreland to Silas W. Jefferson dated January 20, 1842, and filed for record May 10, 1843, have, since the year 1842 been in the actual, open, continuous, exclusive and uninterrupted adverse possession of the property involved, claiming the same openly, notoriously and adversely holding same under enclosures without objection by complainant or any of its alleged predecessors for a period of eighty-three years, and that by reason of these facts the presumption arises that the LaGrange & Memphis Railroad Company conveyed said property by deed to the said John W. Moreland, defendants' predecessor in title. The answers further allege that during the period of eighty-three years the defendants and their predecessors, believing themselves to be the owners, had erected valuable improvements and buildings thereon amounting to thousands of dollars, and had paid all taxes on the property and all front foot assessments for street and sidewalk improvements and all other expenses and had exercised complete and exclusive ownership of said property, and that complainant and its alleged predecessors, during said period of eighty-three years, had full knowledge of the facts and made no objection to the occupancy of said property by the defendants but stood idly by, and alleged that complainant is therefore estopped to assert its alleged claim of title.

The answers further allege that because of this long lapse of time, and of the foregoing facts set forth in the answer, during which the plaintiff failed to assert its alleged title, and because of the death of witnesses and the loss of evidence, the claim of complainant to the property is stale, and because of its laches it cannot assert its claim in a court of equity. The answers allege that the respective defendants are innocent purchasers of their respective lots for value and without any notice of any claim of ownership by the defendants; that defendants have acquired title to the property by adverse possession of more than seven years under recorded color of title, and specifically pleads the statute of limitations of seven years, and the statute of limitations of twenty years and of thirty years, and especially pleads the provisions of Chapter 90 of the Public Acts for the year 1923.

The other defendants filed answers as the tenants of Mrs. Sullivan and Mr. Forrest, respectively, and by which they deny the material allegations of the bill and adopt the allegations contained in the answers of the defendants, Mrs. Sullivan and Mr. Forrest.

There is not much serious conflict ·in the evidence. The complainant deraigns its title from a North Carolina grant and through successive conveyances until a subdivision was made of the property. The particular property involved in this litigation was a part of what is referred to in the record as Country Lot #494 of the subdivision, containing thirty acres, which was subsequently subdivided into lots, and lots Nos. 3, 4, 7, 8 and 15 of the subdivision of Country Lot #494 were subsequently conveyed to the predecessors in title of complainant. These conveyances in order are shown to be a deed from John C. McLemore to Hiram S. Morgan and George H. Wyatt executed on February 1, 1837, and registered in the register's office of Shelby County April 7, 1837, and conveys lots 3, 15 and 8 of the subdivision of Country Lot #494. Lots Nos. 4 and 7 of said subdivision were conveyed by John C. McLemore to White, Tyas and Kimbrough by deed dated July 4, 1835, and registered October 18, 1836. The next deed affecting the title was made by H. S. and J. H. Morgan to William W. and A. F. Tucker, dated February 7, 1837, and registered December 21, 1837, and by which H. S. and J. H. Morgan conveyed to William W. and A. F. Tucker two-thirds interest in Lots 3, 8 and 15, of Country Lot #494. On January 1, 1838, John D. White and John W. Tyas and Buckley Kimbrough conveyed to W. W. Tucker lots 4 and 7 of said subdivision. On February 3, 1837, Wyatt conveyed to Trezevant a one-third interest in Lots 3, 15 and 8 of the same subdivision, said deed being recorded October 15, 1840. On November 13, 1840, William W. Tucker and James Trezevant conveyed to the LaGrange & Memphis Railroad Company Lots 3, 4, 7, 8 and 15 of said subdivision, they having be-

come owners of said lots by a connected chain of title. This deed
was registered, or filed for registration on February 24, 1842. Since
this instrument reflects an important bearing on the questions in-
volved we think it important to set out the granting and conveying
clause, and such other portions of the deed as are material. The
granting and conveying clauses are as follows:

"This indenture made the 13th day of November, in the Year
of Our Lord One Thousand Eight Hundred and Forty between
William W. Tucker and James Trezevant of the County of
Fayette and State of Tennessee, of the one part, and the La-
Grange & Memphis Railroad Company, of the other part: Wit-
nesseth: That the parties of the first part for and in considera-
tion of the sum of Eighteen Hundred and Eighty-three Dollars
have bargained and sold unto the said LaGrange & Memphis
Railroad Company, the following described lots or parcels of
land situated, lying and being in said County of Shelby to-wit:
Lots numbered 3, 15 and 8 being subdivided parts of Lot #494
as exhibited on the plan of the town of Memphis, containing 30
acres allotted to John C. McLemore in the division of the town
reserve amongst the properties of Memphis butted and bounded
as follows:"

These lots are described by metes and bounds. The habendum
and covenants in this deed are as follows:

"To have and to hold the aforesaid lots of land with all and
singular the rights, profits, emoluments, hereditaments and ap-
purtenances of, in and to the same belonging or in any wise ap-
pertaining to the only proper use and behoof of the said La-
Grange & Memphis Railroad Company, their successors and as-
signs forever. And the said W. W. Tucker, J. Trezevant and
A. F. Tucker, for themselves, their heirs, executors and adminis-
trators do covenant and agree to and with the said LaGrange
& Memphis Railroad Company, their successors and assigns that
the before recited and bargained premises they will warrant
and forever defend against the right, title and interest or claim
of all persons whomsoever. . . ."

It will thus be seen that the above conveyance conveys a fee simple
title to the LaGrange & Memphis Railroad Company to the property
included in the conveyance.

The LaGrange & Memphis Railroad Company was chartered
by the state of Tennessee under chapters 107 and 108 of the Acts
of 1837-38, and which authorized the Governor to subscribe for one-
third, and then one-half of the capital stock; and by Chapter 229
of the Acts of 1837-38, the Governor was authorized to appoint one-
half of the directors, and the railroad property and the capital stock
thereof were exempt from taxes. The charter is elaborate and is con-

tained in the record. By Section 13 of the Act incorporating the LaGrange & Memphis Railroad Co. it is provided:

"Said road shall have as many tracks or rails· as may be deemed necessary by the Board of Directors, but shall not be more than 200 feet wide, to which width the company may purchase land and cause the same to be condemned for the use of said road, or any less breadth at the discretion of the directory."

By Chapter 101 of the Acts of 1839-40 the charter of the LaGrange & Memphis Railroad Company was amended, and by Section 2 it was provided:

"SEC. 2: That all real estate owned or hereafter purchased by said company, over and above the ground necessary for the road and depots as prescribed by the charter shall be subject to taxation in the same manner as lands owned by individuals; and all (such) lands which may be ·purchased or obtained by donation at the termini of the road or branches, or at the principal depots shall be sold for the benefit of the individual stockholders."

At the point where the railroad was located across portions of Lots 3, 4, 7 and 8 there was a deep cut, shown by the record to be about 22 feet below the surface. After the roadbed was located through this cut the LaGrange & Memphis Railroad Co., in pursuance of the authority or direction given by Section 2 of Chapter 101 of the Acts of 1839-40 amending its charter, sold and conveyed by warranty deed to Edward S. Todd all the parts of Lots 3, 4 and 7 lying on the east side of the cut or roadbed. This deed appears to be in the usual form conveying in fee with usual convenants and warranties and is dated November 7, 1842, and filed for registration November 9, 1842. The description contained in this deed to these portions of lots lying on the east side of the railroad is material in considering the questions presented on this appeal, and is as follows:

"Beginning in the north line of·Union Street, Memphis, and southwest corner of lot which belonged to Dr. Frain; thence by the west line of said Frain's lot north 30 degrees east, 22 poles to the Pigeon-Roost road; thence by said road north 53 degrees west 30 poles to a stake; thence south 32 degrees west 4 poles 11 lengths to a' stake set 10 feet from the outer edge and about 30 feet from the center of the railroad; thence by said railroad south 32 degrees east 8 poles; thence south 21 degrees east 28 poles, 15 lengths to the place of beginning."

The complainant introduces in the deraignment of its title an instrument executed on the 18th day of January, 1851, as a link in its claim to title. This instrument was held by the Chancellor to be insufficient as a muniment of title, and was one of the questions upon which the Chancellor denied the relief sought by complainant

and dismissed the bill. We therefore deem it important that this instrument be set out in full, and which is as follows:

"This Indenture made and entered into this 18th day of January A. D., 1851, between the LaGrange and Memphis Railroad Company of the first part, and the Memphis and Charleston Railroad Company of the second part. Whereas the said party of the first part acting through its general agents and attorneys in fact Thomas F. Firth and Hugh Davis thereunto legally authorized, has entered into a contract with the Memphis and Charleston Railroad Company party of the second part to this Indenture whereby the said party of the second part has undertaken and agreed to locate and build its road, through or near the Town of LaGrange in the State of Tennessee, and to permit the said party of the first part to subscribe for twelve hundred shares or thirty thousand dollars of stock in said Memphis and Charleston Railroad Company and have also undertaken to collect a debt which the said party of the first part claims to be due and owing to it from the State of Tennessee as a partner or stockholder in said LaGrange and Memphis Railroad Company, and which is supposed by said party of the first part to amount to thirty thousand dollars; and by which said contract the said party of the first part has agreed to transfer to the said party of the second part all the road or roads belonging to the said party of the first part together with its right of way and all other rights, privileges, immunities and appurtenances thereunto belonging and also to secure the payment of said twelve hundred shares of stock, to be subscribed for as aforesaid having agreed to transfer to the said party of the second part the said debtor claim against the State of Tennessee.

"And to give to the said party of the second part, lien upon all the property both real and personal belonging to said LaGrange and Memphis Railroad Company: Now therefore this Indenture witnesseth: that the said party of the first part for and in consideration of the premises, and the sum of one dollar to them paid the receipt whereof is hereby acknowledged and for divers other good and valuable considerations to them thereunto moving, has given, granted, bargained, sold, aliened, enfeoffed, released and assigned, and by these presents. do hereby give, grant, bargain, sell, alien, and enfeoff, and assign to the said Memphis and Charleston Railroad Company, the whole bed of all the road belonging to the said party of the first part, together with its rights of way on said road and all the rights, privileges, immunities and appurtenances thereunto belonging or in any wise appertaining: To have and to hold the same unto the only

proper use and behoof of the said Memphis and Charleston Railroad Company forever: and that the said party of the first part has assigned, transferred, and set over and by these presents do hereby assign, transfer and set over to the said party of the second part, all claims and demands of whatsoever kind, which the said party of the first part has against or upon the State of Tennessee, as a partner or stockholder in its said company upon trust that the said party of the second part, shall by petition to the Legislature of Tennessee, at the next session thereof, endeavor to have the claims of said party of the first part against the State of Tennessee allowed and paid by the said State, and that the said party of the second part shall apply all money which shall or may be realized from said claim to the payment of the said twelve hundred shares of stock in the Memphis and Charleston Railroad Company, which the said above mentioned contract entitled the said party of the first part to subscribe for in the said Memphis and Charleston Railroad Company; and that as a further security for the payment of said stock, the said party of the first part, has given, granted, bargained, sold and conveyed, and by these presents does give, grant, bargain, sell and convey to the said party of the second part, all the property both real and personal belonging to the said LaGrange and Memphis Railroad Company including all its real estate at Fort Pickering. To have and to hold the same unto the only proper use and behoof of the said party of the second part, but upon condition that if the said party of the second part upon its petition to the Legislature of Tennessee, at the next session of the General Assembly of said State shall realize a sufficient sum of money from said claims to pay for said twelve hundred shares of stock, or the said party of the first part shall otherwise pay the installments upon said stock when called for under the Charter of the said Memphis and Charleston Railroad Company, so that no default be made in the payment of the same, then so much of this Indenture as is intended to convey the property of said LaGrange and Memphis Railroad Company as a security for the payment of said stock, is to be void—but otherwise to remain in full force and effect. And the said party of the second part doth covenant and agree to and with the said party of the first part that the said party of the second part will petition the General Assembly of the State of Tennessee at the next session thereof and use due diligence and all proper means to secure the allowance and payment of the said claim, and apply all money that shall be thereby realized from said claim to the payment of said stock—and the said parties do agree and it is well understood between

them that the said Memphis and Charleston Railroad Company has not waived and by said contract of this Indenture does not waive any rights to the property of said company, or any lien, or liens upon said property, nor any other rights, privileges or immunities of any kind whatsoever, which it has acquired under and by virtue of its said purchase of the interest of the State of Tennessee in the said LaGrange and Memphis Railroad Company, but retains the same as fully and to the same extent in every respect as they did or could before the contract hereinbefore recited. In witness whereof, the said Thomas B. Firth and Hugh Davis for and in behalf of said LaGrange and Memphis Railroad Company, and its general agents and attorneys in fact, and James C. Jones as President of said Memphis and Charleston Railroad Company for and in behalf of said company have hereunto set their hands and seals the day and year first above written.

W. A. Rose D. C.
Benjamin Patterson
W. T. Elgin
S. H. Matthews as to
F. B. Firth
John W. Hunt do
Jas. Lashley  }  as to Firth and L. Cogbill as to Davis
A. A. Kirkpatrick  }  & Firth Davis."

James C. Jones, President of the Memphis & Charleston R. R. Co.
Hugh Davis ( Seal)
Tho. B. Firth (Seal)

This instrument will be later referred to in the discussion and consideration of the questions made by the assignments of error on this appeal.

It is disclosed by the record that Edward S. Todd sold the parts of lots 3, 4 and 7 lying east of the railroad cut which he had acquired by the deed from the LaGrange & Memphis Railroad Co., to Pryor B. Frain by warranty deed dated November 8, 1851, and in which the same description was given as in the deed to Todd. It also appears that Frain previously had acquired Lot No. 5 of the subdivision, and on January 31, 1853, Frain sold and conveyed a part of this property to the Memphis & Charleston Railroad Company. The description in that deed of the property so sold is as follows:

"Beginning at a stake on Union Street 20 feet east of the center of the Memphis & Charleston Railroad as located by N. Nims, and running in a northerly direction to the Pigeon-Roost Road imbracing 20 feet along the east side of said railroad and running to my west boundary line or the bed of the LaGrange & Memphis Road according to the plat laid off by said Nims, and containing fourteen-twentieths of an ache."

The property sold by the LaGrange & Memphis Railroad Co. to Todd and by Todd to Frain, is on the east side of the Railroad immediately opposite the property now in controversy, which lies on the west side of the railroad. It also appears that in laying off the road bed the LaGrange & Memphis Railroad Company dug a cut 40 feet wide at the top and 22 feet deep as the same crosses lots 3, 4, 7 and 8. It appears from the above mentioned deeds that the LaGrange & Memphis Railroad Company, in conveying portions of lots 3, 4 and 7, lying east of the railroad cut or road bed, began the description at a point ten feet from the outer edge and about 30 feet from the center of the railroad. If the same distance or width of the right of way was on the west side, this would have made the right of way reserved for the railroad 60 feet in width, assuming that the railroad which was put in the cut was in the center of the reserved space for right of way purposes.

The defendants trace their title through successive conveyances from a deed executed by John W. Moreland to Silas W. Jefferson, dated January 20, 1842, and recorded May 10, 1843. This is the first deed in defendants' chain of title appearing of record, and describes the property conveyed as follows:

"Beginning at a stake ten feet from the south edge of the Memphis & LaGrange railroad and in the east line of a lot containing 3 acres and one-fourth, purchased by Job Bledsoe of James Kimball; thence south 26¼ E. 9 poles eleven and one-half lengths to a stake; thence south 32 degrees west twenty-two poles and twenty-two lengths to a stake in the north edge of Union Street; thence with Union Street N. 84 West ten poles, 18 lengths; thence North 32 degrees E. thirty-one poles twenty and one-half lengths to the beginning."

By reference to the plats made exhibits this conveyance covered a part of Lot 3 where the property sued for in this cause is located and also a part of Lot 8.

John W. Moreland executed a deed to Haman Bolster, dated January 20, 1842, and recorded June 27, 1843. This description in this deed is as follows:

"Beginning at a stake ten feet from the south edge of the Memphis & LaGrange Railroad; thence with said road south 23 degrees East twenty-three poles and sixteen lengths to a stake in the north edge of Union Street; thence West with Union Street north 84 West 19 poles and twenty-two and a half lengths to a stake in the southwest corner of a lot sold by said Moreland to S. W. Jefferson; thence north thirty-two degrees east 22 poles and 22 lengths to the beginning."

This conveyance covered a small part of lot 3 and a part of lot 8 and also a part of lot 7, but no part of the property included in

this deed is sued for or involved in this litigation. To avoid confusion we will say that the plat shows the railroad to run in a southeasterly and northwesterly direction as it crosses this property, and this accounts for the statement in the description "ten feet from the south edge of the Memphis & LaGrange Railroad," where it is generally referred to in the record as the west side and the east side of the railroad.

It appears that the property sued for is within that part of lot 3 conveyed by Moreland to Jefferson by deed dated January 20, 1842, acknowledged April 6, 1843, and recorded May 10, 1843. No attack is made on the successive conveyances from Moreland through the different owners down to the title papers of the respective defendants.

It also appears from the record that the respective defendants and those under whom they claim title have been in the actual, open, continuous, notorious, and undisputed and adverse possession of the respective pieces of property sued for, under recorded deeds since Moreland conveyed to Jefferson by the deed recorded in 1843, and no question of their right to occupy and to enjoy the property was made until the filing of this bill by the Southern Railway Company in 1925, a period of about eighty-three years.

At the hearing of the cause the Chancellor dismissed complainant's bill at the cost of complainant, and in so doing held that the instrument hereinbefore quoted in full from the LaGrange & Memphis Railroad Co. to the Memphis & Charleston Railroad Co., was insufficient as a muniment of title, and therefore a break in the chain of title, and further held that from all the facts and circumstances as disclosed by the record that the LaGrange & Memphis Railroad Company had executed a deed to Moreland to the property covered by his deed to Jefferson, and that said deed was lost and not placed to record. The Chancellor did not pass upon the question of adverse possession and the statute of limitations, nor did he construe the instrument which he held to be insufficient as a muniment of title, as to whether the same was a deed conveying the property to the Memphis & Charleston Railroad Company, or a mortgage executed for the purposes recited in the latter portion of the instrument. The Chancellor simply held that the instrument was insufficient as a muniment of title.

From the decree of the Chancellor complainant has appealed to this court and has assigned five errors.

By the first assignment it is said that the court erred in holding that the instrument claimed by the complainant as its muniment of title, connecting it with the LaGrange & Memphis Railroad Company was not sufficient as a muniment of title, and in holding that for that reason complainant was not entitled to recover.

By the second assignment it is said that the court erred in holding that the complainant was not entitled to recover for the reason that it appeared from a preponderance of the proof that sometime prior to January 20, 1842, the LaGrange & Memphis Railroad Company conveyed to John W. Moreland the land in controversy, and the present owner and occupants of that land are connected in title by a conveyance or by descent cast with the title which John W. Moreland acquired by purchase from the LaGrange & Memphis Railroad.

By the third assignment it is urged that the court erred in holding that there was a presumption of a deed from the LaGrange & Memphis Railroad Company to John W. Moreland on account of the fact that the LaGrange & Memphis Railroad Co. conveyed property to other parties on the east side of the tract at approximately the same time that Moreland conveyed to Jefferson.

By the fourth assignment the holding of the court to the effect that the Act of 1837 creating and chartering the LaGrange & Memphis Railroad Co. indicated that the legislature had in mind that the railroad had acquired land which would not be needed for any of its railroad purposes, and by subsequent legislation, being Chapter 101 of the Acts of 1839-40 directed that the property in litigation should be sold, is challenged as error.

The fifth assignment of error complains of the action of the court in dismissing complainant's bill for the reason that complainant has the legal title to the property in question as shown by grant from the State of North Carolina down to the decree in the case under which complainant became the purchaser.

The first question presented by the assignments of error is with reference to the holding of the court that the instrument executed by the LaGrange & Memphis Railroad Company to the Memphis & Charleston Railroad Co. is insufficient as a muniment of title.

We have examined this instrument, and think it purports to be a deed to the Memphis & Charleston Railroad Co. to the railroad right of way and road bed, and from its recitals we are of the opinion that as to the balance of the holdings and property of the Memphis and Charleston Railroad that it merely gives a lien in the form of a mortgage for certain purposes recited therein. If in this interpretation of the instrument we are correct, it would afford a muniment of title to the road bed, and the strip of land in contemplation of the parties as the right of way, meaning such portions of the property as the LaGrange & Memphis Railroad had deemed sufficient for its road right of way. The railroad was cut through this property a width of forty feet at the top and 22 feet deep, and the railroad tracks placed in the center of the cut. It owned considerable property adjoining on both sides of this cut. By Chapter 101 of the

Acts of 1839-40 all property not used by the railroad company for railroad purposes was made subject to taxation with specific direction that the railroad company should sell all of the property which it had acquired by purchase or donation and not needed for railroad purposes. The charter of the LaGrange & Memphis Railroad Company was granted by Chapters 107 and 108 of the Acts of 1837-38. By Section 13 of the Charter it was provided that the road should have as many tracks or rails as may be deemed necessary by the Board of Directors, but shall not be more than 200 feet wide, to which width the company may purchase land, and cause the same to be condemned for the use of the road, or any less breadth at the discretion of the directors. We think it clearly inferable from all the facts and circumstances as disclosed by the record that after the LaGrange & Memphis Railroad Co. had acquired by purchase all of lots 3, 4, 7, 8 and 15 of the subdivision of Country Lot #494 from Tucker, et al., by deed of November 13, 1840, that it at first only intended to occupy the 40 feet in width through these lots, or parts of lots for its railroad, and made the cut 40 feet wide at the top. After the passage of Chapter 101 of the Acts of 1839-40, it sold to Todd all of that portion of lots 3, 4 and 7 lying east of the cult or road bed. In making this sale it reserved a strip 10 feet from the outer edge and about 30 feet from the center of the road bed. This would indicate that in making this sale to Todd it was considered by the directors that the right of way should be 60 feet wide, and sold all in excess of the portions of these lots lying on the east side of the railroad from a point 10 feet east of the cut and thirty feet from the center of the track or road bed. This being true, in making the conveyance to the Memphis & Charleston Railroad to its road bed and right of way, but not including its other properties as an absolute sale, conveyed the fee to the road bed and right of way, and in the same instrument and for the purposes set forth in the instrument gave a lien or mortgage on the balance of its property. There is nothing in the record that shows that the mortgage was ever foreclosed, or that the Memphis & Charleston Railroad ever acquired by purchase or otherwise the remainder of the property owned by the Memphis & Charleston Railroad and not covered by its road bed and right of way as it had been designated or occupied by the railroad company. In this view of the case we are of the opinion that the Chancellor reached the correct conclusion in holding and decreeing that this instrument was insufficient as a muniment of title covering the property involved in this suit, since this property is not within the forty feet, or the sixty feet, occupied by the railroad.

However, we are further of the opinion that under the facts and circumstances as disclosed by this record the LaGrange & Memphis Railroad Company prior to the execution of the instrument to the

Memphis & Charleston Railroad Company had conveyed to Moreland or to a predecessor, the property which Moreland subsequently conveyed to Jefferson and to Bolster. In the first place, we think it clear that the LaGrange & Memphis Railroad Co. did not consider that it would need this property in connection with the operation of the railroad. It was located only a few hundred feet from its depot, and in order to reach the depot on a level it was necessary to make a deep cut through these lots about 22 feet deep. This would put the road bed for the tracks 22 feet below the surface at that point. It was limited under the charter provisions to 200 feet width, and specifically provided for a less width than 200 feet, or such less width as the directors of the road may determine. Within a short time after the passage of the amendment to the charter, being Chapter 101 of the Acts of 1839-40, it sold to Todd all of these lots lying east of the railroad cut reserving a strip only 10 feet wide on the east side. The topography was the same on the west side as on the east side, that is, the railroad tracks passed through a cut more than 20 feet below the surface. The amendment to the charter directed that all property not needed for railroad purposes be sold and the proceeds divided among the stockholders. In the same year that the railroad company sold to Todd on the east side of the railroad, Moreland sold to Jefferson and to Bolster the property on the west side, and the description sets back ten feet from the railroad cut, the same distance exactly as was reserved by the railroad company in its sale of the property on the east side to Todd. We think this a potent circumstance to be considered. The successors in title from Moreland down to the defendants used and occupied this property continuously. They paid all the taxes on it, and exercised all the other rights of ownership, and built houses on it since 1847 according to the evidence. For all these years they remained in the quiet and undisturbed possession. Nearly a century had elapsed since the Memphis & Charleston Railroad Co. had acquired the railroad property from the LaGrange & Memphis Railroad Co. During all these years the defendants and their predecessors in ownership, a period of about eighty-three years, occupied the property involved under connected chain of title, and were in the open and notorious possession of the same. Valuable buildings had been erected by them, and the property because of these buildings and improvements had increased enormously in value, and yet we find no objection made by either of the railroads who successively owned the railroad property to the occupancy and improvement of this property, until the filing of this bill in the year 1925. In addition to this, the minute books and records of the stockholders meetings and the directors meetings of the Memphis & LaGrange Railroad Company and of the Memphis & Charleston Railroad Co. were not produced by the complainant al-

though called for by the defendants. The witness for complainant stated that these books could not be found, although they were presumably taken over by the Memphis & Charleston Railroad Co. when it acquired the railroad property of the LaGrange & Memphis Company. These books, if produced, would no doubt have shed much light on the transactions, and would probably have shown some order or resolution directing the officers of the company to sell the property on the east side of the road bed and also on the west side. The natural, proper and legal action to have been taken by the LaGrange & Memphis Railroad Company would have been to have sold the property on the west side of the railroad tracks at this point as directed by the amendment to the charter, in the same way and manner that it was complied with in the sale of the property to Todd on the east side of the railroad cut. The same authority that directed that they should sell the property on the east side directed them to sell the property on the west side, and all other property not needed for railroad purposes. The directors complied with this direction in selling to Todd the property on the east side, and certainly no reason is shown why the directors should not have complied with the direction of the legislature by selling the property on the west side. The railroad company certainly did not at that time, or at any other time, so far as is disclosed by this record, need this property on the west side for any railroad use or purpose. It is inconsistent with reason to assume that the directors failed to comply with the provisions of the amended charter in the matter of selling all property which it had acquired by purchase or donation or otherwise not needed in the operation of its railroad. The fact that it did sell on the east side is strongly persuasive that it also sold on the west side, since the topographical conditions were the same. If the directors had then considered that they would probably have need for additional space for railroad purposes, certainly they would not have sold up to within thirty feet from the center of the road bed on the east side to Todd. Another circumstance to be considered is that the complainant has marked by posts the margin of its right of way on the west side as the same passes across the property originally sold by Moreland to Bolster, and these posts are set at a distance ten feet from the edge of the cut. In this suit the railroad company is not seeking to recover any of the property sold by Moreland to Bolster, nor other portions of the same lots sold by Moreland to Jefferson, except the particular portion owned and occupied by the defendants and involved in this suit. We find nothing in the record or any deed that would indicate that the railroad subsequently sold to Bolster, or his predecessors in title, any portion of the property covered by the deed from Moreland to Bolster, and hence the title to the Bolster portion is in the same condition as the title to the

defendants' property since the defendants claim through a succession of deeds beginning with the Moreland to Jefferson deed, and those adjoining owners of the property sold by Moreland to Bolster claim through a chain of title extending from the deed from Moreland to Bolster, and the plight of the respective titles, is, therefore, the same.

The fact that Moreland began the description in selling to both Jefferson and Bolster at a point 10 feet from the railroad cut is a further circumstance indicating that the railroad company had conveyed to him the property on the west side reserving 10 feet from the edge of the cut, or thirty feet from the center of the railroad bed in the same way and manner that the same was reserved in selling to Todd on the east side. There are other facts and circumstances that lead us inevitably to the conclusion that the LaGrange & Memphis Railroad Company made a deed to Moreland to the portion of the lots on the west side of the railroad which he shortly thereafter conveyed to Jefferson and to Bolster. We are therefore of the opinion that under the facts and circumstances as disclosed by the record the LaGrange & Memphis Railroad Company made a deed to this property to Moreland which deed he failed to have recorded in the register's office. This is not especially surprising when we consider that there was considerable delay in recording all of the instruments, or most of them made exhibits to the record. The instrument executed by the LaGrange & Memphis Railroad to the Memphis & Charleston Railroad was dated January 18, 1851, and recorded August 24, 1855. The instrument executed by George H. Wyatt to James Trezevant is dated February 3, 1837, and was not recorded until October 15, 1840. The deed from Tucker and Trezevant to LaGrange & Memphis Railroad Co. is dated November 30, 1840, and was not recorded until February 24, 1842. The deed from McLemore to John D. White, et al., was executed July 4, 1835, and was registered October 18, 1836. It would thus appear that delays in registering instruments were not unusual. This, in a measure at least, accounts for the failure of Moreland to register the deed executed to him by the LaGrange & Memphis Railroad Company some time in the year 1842, which was several years prior to the date of the execution of the instrument by the LaGrange & Memphis Railroad Co. to the Memphis & Charleston Railroad Co. dated 1851 and recorded in 1855.

We are further of the opinion that the statute of limitations of seven and twenty years would bar the action by complainant, and especially Chapter 90 of the Acts of 1923. Section 1 of that Act provides:

"That any person holding any real estate or land of any kind or any legal or equitable interest therein and such person and those through whom he claims having been in adverse posses-

sion of same for seven years where said real estate is held and claimed by him or those through whom he claims by a conveyance, devise, grant, a decree of a court of record, or other assurance of title purporting to convey an estate in fee and such conveyance, devise, grant, or other assurance of title has been recorded in the register's office of the county in which the land lies for a period of thirty (30) years or more or such decree entered on the minutes of such court for a period of thirty years or more is hereby vested with an absolute and indefeasible title to such real estate or interest therein.''

By Section 2 of the same Act it is provided:

''That where such land or interest therein is held as set out in Section 1 of this Act, no person, whether under disability or not, firm, corporation, or the state of Tennessee, shall commence or sustain an action for the recovery of the same in any court of this State.''

This Act makes no exceptions, and is evidently intended to quiet title, and to make owners of property holding under the conditions as provided in the Act secure against suits to dispossess or to eject.

It is the contention of appellant under certain of the assignments of error that adverse possession is not inconsistent with the rights of a railroad company to its right of way. This contention is based upon the rule that the railroad company having but an easement in its right of way, and not owning the fee, that the possession or occupancy of the fee owner to that portion of the right of way not actually in use by the railroad company for railroad purposes is not inconsistent with the prior and superior right of the railroad company to all of the space within the limits of its right of way, and therefore the possession, or occupancy, by the fee owner could not be adverse until the railroad may need the premises and demand it for railroad purposes. This is undoubtedly the settled law where the railroad company only owns or claims an easement for railroad purposes (L. & N. R. R. Co. v. Fort and Wife, 3 Hig., 723; R. R. v. Tellsford, 5 Pick., 292; Railway Co. v. Tel. Co., 17 Pick., 62; R. R. v. French, 100 Tenn., 207; Southern Ry. Co. v. Vann, 142 Tenn., 76; R. R. v. Crow, 108 Tenn., 17; Southern Ry. Co. v. Moore, 7 Tenn App., 319; R. R. v. Tel. Co., 101 Tenn., 61).

In all of the cases cited and relied upon by appellant in support of its contention that adverse possession and Chapter 90 of the Acts of 1923 do not apply in the matter of the use by a railroad company of its easement in land acquired for railroad purposes, are cases wherein the railroad company did not own the fee to the land but only owned the right of way easement. This holding is on the theory that until the railroad company has use for the portions of the right of way not actually occupied by it that the owner of the

fee may use and occupy such unoccupied portion until such time as the railroad company may have need of it for railroad purposes, and such use and occupancy by the fee holder is not adverse, in that it is not inconsistent with the rights of the railroad company to take the property at any time it becomes necessary or is needed in connection with its railroad business or tracks.

In the present case complainant claims to own the fee to the property involved. It is true there is a brief statement in the bill to the effect that the railroad company now needs the property involved for railroad purposes, but there is no proof in the record that the railroad company does need it at this time for any railroad purposes. The original bill alleges that complainant is the owner of the property involved and has a superior outstanding legal title thereto. The instrument executed by the LaGrange & Memphis Railroad Co. to the Memphis & Charleston Railroad Co. insofar as the same may be considered as a conveyance of the road bed and right of way purports to be and is a conveyance of the fee, and not merely of an easement for railroad purposes. Where a railroad company is the owner of the fee, or claims to be the owner of the fee, and not merely an easement in the property referred to as a right of way there could be inconsistency in the adverse possession of the property by others claiming and occupying same under recorded title papers in the same way and manner that would apply to other owners of the fee. The only person or institutions that could be excepted from the operation of the statute of limitations are the state and county and municipal branches of government, in the exercise of governmental functions, and persons under disability and school lands reserved by the state for educational purposes. (Shelby County v. Bickford, 102 Tenn., 394; Bank v. Dibrell, 3 Sneed, 379; Field v. Wheatley, 1 Sneed, 351; Central Hospital v. Adams, 134 Tenn., 429.)

In discussing the subject the court in the case of Sampson v. University, 2 Swann, 600, said:

"It is well settled by a long series of decisions in this State that the savings of the statute (of limitations) cannot be increased or enlarged by the courts. New exceptions must be made by the legislature as that body may deem it wise and proper. The titles of corporations whether they are created for school or other purposes are certainly subject to the general bar of the statute. There is no saving for them."

In the case of Central Hospital v. Adams, 134 Tenn., 429, the court states the rule as follows:

"Even public corporations whether they are municipal or mere agencies of the state, are all more or less branches of the government and necessarily clothed with attributes and inci-

dents of sovereignty, yet when they are clothed with the capacity to sue and be sued, to have a common seal, to take and hold property and transact business they are governed by the same laws, rules and regulations and subject to the same limitations that natural persons are, except so far as they may be exempted or relieved by positive laws.''

We think that the rule is well settled both by adjudicated cases in this State and practically all other states, as well as by text law, that where the fee to the land is in the railroad company that even as to a portion of its statutory right of way not in actual use, title may be acquired under recorded color of title where the possession and occupancy is adverse, and held openly, notoriously, continuously, uninterruptedly and adversely for the statutory length of time or by prescription for a period of twenty or more years. (22 R. C. L., 868; 2 C. J., 225; 1 R. C. L., 337; 87 Am. St. Rep., 766, and notes (Wash.), 155 Ind., 312, 58 N. E., 192; 182 Ala., 516; I. C. R. R. Co. v. Houghton, 1 L. R. A., 213, 126 Ill., 223, 61 N. Y. Law, 322, 84 Minn., 152, 76 Miss., 374, 216 Ala., 656, 110 Mich., 170, 125 Miss., 697, 90 Ark., 178, 155 Pac., 255 (Okla.), 67 S. C., 548, and numerous other cases.)

It is held by the Tennessee cases that even where the railroad company only owns an easement, adverse possession by the owner of the fee will begin if the right of way is needed for railroad purposes and the railroad demands possession and the owner of the fee declines to surrender the possession. (R. R. v. Telford, 89 Tenn., 293; R. R. v. Dunovan, 104 Tenn., 465.) Cases from other states are to the same effect. This holding proceeds upon the theory that the possession of the fee owner of the unused portion of the right of way is not inconsistent with the easement owned by the railroad company, and hence the possession or occupancy by the fee holder is not adverse until such time as the railroad company has need for the property and demands possession. But upon a demand for possession by the railroad company and a need for the property for railroad purposes and a refusal by the fee owner to surrender possession, the statute of limitations begins to run.

Without further prolonging this opinion we are of the opinion that the assignments of error are not well taken and cannot be sustained. It results that all assignments of error are overruled and the decree of the Chancellor is accordingly affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.